## IN THE UNITED STATES BANKUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:        **CLARENCE O'NEAL LEVERETTE, SR.**          **CHAPTER 13**
             **DEBTOR**                                  **BANKRUPTCY NO. 11-51548**

---

COMMUNITY BANK                                            Movant

VS.                                          Motion No. _____

CLARENCE O'NEAL LEVERETTE, SR., Debtor(s) And
J. C. BELL, Trustee                                      Respondents

### MOTION TO LIFT STAY AND FOR ABANDONMENT

Community Bank moves the Court to lift stay and for abandonment, and for cause would show as follows:

1.      This Court has jurisdiction over the parties and subject matter to this action pursuant to 28 U. S. C. §§ 157 and 1334 and 11 U. S. C. §§ 362 and 554.  This is a core proceeding pursuant to 28 U. S. C. § 157(b) (2) (A), (G) and (O).

2.      Community Bank  is a secured creditor of Debtor and holds a valid, duly perfected security interest in certain property owned by debtor. Copies of documents supporting the debt and Community Bank's security interest are attached to this motion.

3.      As of the date of the filing of the bankruptcy, the payoff balance on Debtor's debt on loan number 6947 to Community Bank was $235,000.00.

4.      The Debtor does not have the financial means to propose a good faith plan to pay loan number 6947 and is unable to present a confirmable plan to do so.

5.      As of the date of filing, the payoff balance on loan number 3738 was $23,878.00. The collateral which secures this loan is worth less than the amount of the payoff therefore, there is no equity.

6.     Community Bank has not received adequate protection as required by 11 U.S.C. §§ 361, 362 and 363.

WHEREFORE, PREMISES CONSIDERED, Community Bank requests the Court to order the Trustee to abandon Community Bank's collateral pursuant to 11 U.S.C. § 554 and terminate the automatic stay of 11 U.S.C. § 362 to allow Community Bank to proceed to enforce its security interest and repossess and liquidate its collateral.   Community Bank requests the Court to grant such other relief as is necessary under the circumstances.

DATED:  November 7, 2011.

Respectfully submitted,

COMMUNITY BANK

BY: _____
Stephen E. Gardner, Its Attorney

Stephen E. Gardner (MSB 4749)
YoungWilliams P.A.
P. O. Box 23059
Jackson, MS  39225-3059
Telephone:     601-948-6100
Fax:           601-355-6136
steve.gardner@youngwilliams.com

## CERTIFICATE OF SERVICE

I, Stephen E. Gardner, do hereby certify that I have this date transmitted via Electronic

Case Filing, as it appears on this date in the Court registered e-filers of CM/ECF and or via U.S.

Mail, postage prepared, a true and correct copy of the above and forgoing Motion for Relief

from Automatic Stay to the below parties:

Electronically mailed to:

John Anderson
johnjohna7@aol.com

J. C. Bell, Trustee
mdg@jcbell.net

U. S. Trustee
USTPRegion05.JA.ECF@usdoj.gov

Mailed via USPS to:

Clarence Leverette, Sr.
P. O. Box 420
State Line, MS 39362

Dated this the _7th_ day of _November_____, 2011

Stephen E. Gardner

note # 6947

| | | |
|---|---|---|
| CLARENCE O LEVERETTE<br>MERLINE W. LEVERETTE<br>P O BOX 420<br>STATE LINE MS 39362 | COMMUNITY BANK,<br>ELLISVILLE, MISSISSIPPI<br>P. O. BOX 250<br>ELLISVILLE, MS 39437 | Loan Number _____ 6947<br>Date _____ 3/04/02<br>Maturity Date _____ 3/04/17<br>Loan Amount $ ___ 445,000.00<br>Renewal Of _____<br>WT /CWB |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of _____

**FOUR HUNDRED FORTY FIVE THOUSAND AND NO/100** _____ Dollars $ ___ 445,000.00

☒ **Single Advance:** I will receive all of this principal sum on ___ 3/04/02 ___ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum principal sum more than one time. This feature is subject to all other
conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow (subject to all other conditions) up to the maximum principal sum only one time.

**INTEREST:** I agree to pay interest on the outstanding principal balance from ___ 3/04/02 ___ at the rate of ___ 7.500 ___ %
per year until ___ INDEX RATE CHANGES ___ .

☒ **Variable Rate:** This rate may then change as stated below.

☒ Index Rate: The future rate will be ___ 2.000% ABOVE ___ the following index rate:
**NEW YORK CONSENSUS PRIME RATE AS PUBLISHED IN THE WALL STREET JOURNAL** _____

☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ Frequency and Timing: The rate on this note may change as often as ___ EVERY 36 MONTHS ___ .
A change in the interest rate will take effect ___ EVERY 36 MONTHS ___ .

☐ Limitations: During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each.

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.   ☒ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a ___ ACTUAL/365 ___ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than ___ 15 ___ days after it is due, I agree to pay a late charge of ___ 4% OF THE PAYMENT OR ___
$5.00 WHICHEVER IS GREATER WITH A MAX. OF $50.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount
above: ___ 28.50 FILING FEE ___ $250.00 ATTORNEY FEE ___ APPRAISAL FEE ___

**PAYMENTS:** I agree to pay this note as follows 8859.61 ORIGINATION FEE   4005.00 FSA FEE

☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in ___ 15 ___ payments. The first payment will be in the amount of $ ___ 50,429.98 ___
and will be due ___ March 04, 2003 ___ . A payment of $ ___ 50,429.98 ___ will be due ___ ON THE   4th ___
DAY OF EACH ___ March   ANNUALLY ___ thereafter. The final payment of the entire
unpaid balance of principal and interest will be due ___ March 04, 2017 ___ .

**PURPOSE:** The purpose of this loan is ___ POULTRY HOUSES PUT ON PERMANENT FINANCING ___ .

**ADDITIONAL TERMS:**

I AGREE THAT THIS LOAN IS SEPARATELY SECURED BY DEED OF TRUST AND SECURITY
AGREEMENT EXTENSION DATED MARCH 4, 2002.

I AGREE TO PAY A MINIMUM INTEREST CHARGE OF $15.00 IF I PAY THIS LOAN OFF BEFORE
YOU HAVE EARNED THAT MUCH INTEREST.

UNIVERSAL NOTE AND SECURITY AGREEMENT

Express © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UNS-LAZ 2/6/2001

## SECURITY

**SECURITY INTEREST:** I give you a security interest in all of the Property described below that I own, or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which I have by law or agreement against my account debtor or obligor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule I give to you, but such a list is not necessary to create a valid security interest in all of my equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use my name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following:

FIRST MORTGAGE COVERING 80 ACRES LAND, COMPOST      AND 4 40X400 POULTRY HOUSES INCLUDING ALL POULTRY
EQUIPMENT. AND ALSO                                  SECOND MORTGAGE COVERING 1996 CROWN MODEL 6031
16X84 MOBILE HOME SERIAL #CHAL1259 SEE ALSO;         SECURITY AGREEMENT EXTENSION DATED MARCH 4, 2002.

If applicable, enter real estate description and record owner information: _____

_____

_____

The Property will be used for a   ☐ personal  ☐ business  ☒ agricultural  ☐ _____ purpose.

Borrower/Owner State of organization/registration (if applicable) _____

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**GENERALLY** - This agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. If property described in this agreement is located in another state, this agreement may also, in some circumstances, be governed by the law of the state in which the Property is located.

**NAME AND LOCATION** - My name indicated on page 1 is my exact legal name. If I am an individual, my address is my principal residence. If I am not an individual, my address is the location of my chief executive office or sole place of business. If I am an entity organized and registered under state law, my address is located in the state in which I am registered, unless otherwise indicated on page 2. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**OWNERSHIP AND DUTIES TOWARD PROPERTY** - I represent that I own all of the Property, or to the extent this is a purchase money security interest I will acquire ownership of the Property with the proceeds of the loan. I will defend it against any other claim. Your claim to the Property is ahead of the claims of any other creditor. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position. I will not use the Property for a purpose that will violate any laws or subject the Property to forfeiture or seizure.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these records at any reasonable time. I will prepare any report or accounting you request, which deals with the Property.

I will keep the Property in my possession and will keep it in good repair and use it only for the purpose(s) described on page 1 of this agreement. I will not change this specified use without your express written permission. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

I will keep the Property at my address listed on page 1 of this agreement, unless we agree I may keep it at another location. If the Property is to be used in another state, I will give you a list of those states. I will not try to sell the Property unless it is inventory or I receive your written permission to do so. If I sell the Property I will have the payment made payable to the order of you and me.

You may demand immediate payment of the debt(s) if the debtor is not a natural person and without your prior written consent: (1) a beneficial interest in the debtor is sold or transferred, or (2) there is a change in either the identity or number of members of a partnership, or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation.

I will pay all taxes and charges on the Property as they become due. You have the right of reasonable access in order to inspect the Property. I will immediately inform you of any loss or damage to the Property.

If I fail to perform any of my duties under this security agreement, or any mortgage, deed of trust, lien or other security interest, you may without notice to me perform the duties or cause them to be performed. Your right to perform for me shall not create an obligation to perform and my

your failure to perform will not preclude you from exercising any of your other rights under the law or this security agreement.

**PURCHASE MONEY SECURITY INTEREST** - For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any nonpurchase money loan also secured by this agreement will not be deemed to apply to the Purchase Money Loan, and (b) payments on the Purchase Money Loan will be deemed to apply first to the nonpurchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired or if acquired at the same time, in the order selected by you. No security interest will be terminated by application of this formula. "Purchase Money Loan" means any loan or the proceeds of which, in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancing of such loan.

**PAYMENTS BY LENDER** - You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the Secured Debt, or you may, at your option, demand immediate payment of the amount advanced.

**INSURANCE** - I agree to buy insurance on the Property against the risks and for the amounts you require and to furnish you continuing proof of coverage. I will have the insurance company name you as loss payee on any such policy. You may require added security if you agree that insurance proceeds may be used to repair or replace the Property. I will buy insurance from a firm licensed to do business in the state where the Property is located. The firm will be reasonably acceptable to you. The insurance will last until the Property is released from this agreement. If I fail to buy or maintain the insurance (or fail to name you as loss payee) you may purchase it yourself.

**WARRANTIES AND REPRESENTATIONS** - If this agreement includes accounts, I will not settle any account for less than its full value without your written permission. I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I take back in trust for you. I will not mix them with any other property of mine. I will deliver them to you at my request. You will not be in any way responsible if I do anything wrong. If you do use any of the proceeds you will not be responsible to return any items or items retaken by myself. I will do so. You may exercise my rights with respect to obligations of any account debtors, or other persons obligated on the Property, to pay or perform, and you may enforce any security interest that secures such obligations.

┌─────────────────────────────────────────────┐
│ Any person who signs within this box does so to give you a security │
│ interest in the Property described on this page. This person does not │
│ promise to pay the note. "I" as used in this security agreement will │
│ include the borrower and any person who signs within this box. │
│                                                                       │
│ Date _____                                                 │
│                                                                       │
│ Signed _____                         │
└─────────────────────────────────────────────┘

*GOL*   *(signature)*

If this agreement covers inventory, I will not...pose of it except in my ordinary course of business at the fair market value for the Property, or at a minimum price established between you and me.

If this agreement covers farm products I will provide you, at your request, a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. In addition to those parties named on this written list, I authorize you to notify at your sole discretion any additional parties regarding your security interest in my farm products. I remain subject to all applicable penalties for selling my farm products in violation of my agreement with you and the Food Security Act. In this paragraph the terms farm products, buyers, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

If this agreement covers chattel paper or instruments, either as original collateral or proceeds of the Property, I will note your interest on the face of the chattel paper or instruments.

**REMEDIES** - I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my last known address by first class mail will be reasonable notice under the Uniform Commercial Code. My current address is on page 1.

**PERFECTION OF SECURITY INTEREST** - I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining possession of or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code.

## ADDITIONAL TERMS OF THE NOTE

**DEFINITIONS** - As used on pages 1 and 2, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW** - The law of the state in which you are located will govern this agreement. Any term of this agreement which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**PAYMENTS** - Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST** - Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal sum outstanding at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to in this note (either before or after maturity). If any rate of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE** - The index will serve only as a device for setting the interest rate on this note. You do not guarantee by selecting this index, or the margin, that the interest rate on this note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers.

**POST MATURITY RATE** - For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS** - If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph on page 2.

**MULTIPLE ADVANCE LOANS** - If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**SET-OFF** - I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
   "Right to receive money from you" means:
   (1) any deposit account balance I have with you;
   (2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
   (3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where your rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right to set-off.

**DEFAULT** - I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the Property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES** - If I am in default on this note you have, but are not limited to, the following remedies:
   (1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued unpaid charges).
   (2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "SET-OFF" paragraph herein.
   (3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
   (4) You may refuse to make advances to me or allow purchases on credit by me.
   (5) You may use any remedy you have under state or federal law.
   (6) You may make use of any remedy given to you in any agreement securing this note.

By selecting any one or more of these remedies you do not give up your right to use later any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to consider later the event a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES** - I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER** - I give up my rights to require you to do certain things. I will not require you to:
   (1) demand payment of amounts due (presentment);
   (2) obtain official certification of nonpayment (protest); or
   (3) give notice that amounts due have not been paid (notice of dishonor).
   I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT** - I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**CREDIT INFORMATION** - I agree and authorize you to obtain credit information about me from time to time (including requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGES 1, 2 AND 3).** I have received a copy on today's date.

_(signature)_ Clarence Leverette

CLARENCE O LEVERETTE         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

_(signature)_ Merline Leverette

MERLINE W. LEVERETTE         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

SIGNATURE FOR LENDER:

Express   © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN3-LAZ 2/6/2001                 (page 3 of 3)

| CLARENCE O LEVERETTE | COMMUNITY BANK, | EXTENSION OF SECURITY |
| MERLINE W. LEVERETTE | ELLISVILLE, MISSISSIPPI | AGREEMENT DATED: |
| P O BOX 420 | P. O. BOX 250 | 3/04/02 |
| STATE LINE MS 39362 | ELLISVILLE, MS 39437 | |
| **DEBTOR'S NAME AND ADDRESS** | **SECURED PARTY'S NAME AND ADDRESS** | 6947 |

For value received, the Debtor hereby grants the Secured Party a security interest in the following additional collateral:

HOUSES AND EQUIPMENT INCLUDING ALL EQUIPMENT IN AND ABOUT SAID BUILD-
INGS AND POULTRY HOUSES, USED IN AND ABOUT THE OPERATION OF SAME FOR
THE GROWING, PRODUCING, AND MARKETING OF POULTRY AND POULTRY PRODUCTS
THEREON AND THEREFORE, INCLUDING TOOLS, IMPLEMENTS, FIXTURES,
APPLIANCES, FEEDERS, TROUGHS, HEATING SYSTEMS, PIPES AND ALL OTHER
ITEMS OF EVERY NATURE AND DESCRIPTION WHICH ARE LOCATED ON OR
CONNECTED WITH SAID PREMISES USED IN AND ABOUT THE PRODUCTION AND
MARKETING OF SAID POULTRY.

ASSIGNMENT OF WAGES OF ALL MONIES, WAGES, CLAIMS FOR WAGES, AND/OR
COMMISSIONS, DUE OR TO BECOME DUE.

EQUIPMENT: ALL EQUIPMENT INCLUDING, BUT NOT LIMITED TO, ALL MACHINERY,
VEHICLES, FURNITURE, FIXTURES, MANUFACTURING EQUIPMENT, FARM MACHINERY
AND EQUIPMENT, SHOP EQUIPMENT, OFFICE AND RECORDKEEPING EQUIPMENT, AND
PARTS AND TOOLS. ALL EQUIPMENT DESCRIBED IN A LIST OR SCHEDULE WHICH I
GIVE TO YOU WILL ALSO BE INCLUDED IN THE SECURED PROPERTY, BUT SUCH A
LIST IN NOT NECESSARY FOR A VALID SECURITY INTEREST IN MY EQUIPMENT.

By signing below, Debtor acknowledges that this document describes additional collateral which is subject to all terms and conditions of the Security Agreement referred to above.

Authorized Signature(s) of Secured Party - sign below only if filing this document.

Debtor _CLARENCE O LEVERETTE_ (TITLE)

Debtor _MERLINE W. LEVERETTE_ (TITLE)

Debtor _____ (TITLE)

© 1984, 1990 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 (1-800-397-2341) FORM SA-E  3/7/90

*(page 1 of 1)*

JFS/CWB

# MODIFICATION AGREEMENT

STATE OF <u>Mississippi</u>                                                    LOAN NO. ____6947 _____

COUNTY OF __JONES_____

THIS AGREEMENT between __CLARENCE O LEVERETTE__
__and MERLINE W. LEVERETTE_____ (Borrower) and

___COMMUNITY BANK, ELLISVILLE, MISSISSIPPI_____ (Lender),

WITNESSETH, That

WHEREAS, Lender has heretofore made a loan to Borrower in the principal amount of _____

<u>Four hundred forty five thousand & no/100</u>_____ DOLLARS ( __$445,000.00__ )

evidenced by Borrower's Note dated ___03/04/02___ with current balance of ___$299,795.04_____; and

WHEREAS, Borrower has requested Lender to modify certain provisions and conditions pertaining to the aforesaid

Loan; and

NOW THEREFORE, In consideration of the premises and other good and valuable consideration, Borrower agrees

with Lender as follows, to-wit:

A) To change maturity date from _____03/04/17_____ to ___03/04/17_____.

B) To change next payment date from ___03/04/06_____ to ___03/04/06_____.

C) To change APR Rate from ___7.5000_____ to ___7.5000_____.

```
THIS IS A VARIABLE RATE LOAN NYP PLUS 2.00 WITH REVIEW EVERY 36 MONTHS
NEXT REVIEW DATE 03-03-05 ALL THIS IS UNCHANGED.
THIS IS TO CHANGE THE ANNUAL PAYMENT FROM $44,742.90 TO $38,756.88
RATE UNCHANGED, TERMS UNCHANGED THIS TO CHANGE ANNUAL PAYMENT ONLY
KEEP PARTIAL PAYMENT NEXT DUE DATE 03-04-06.
```

Borrower hereby authorizes and directs Lender to take any action necessary to conform the original Note, security
instruments and other collateral documents to the terms as herein modified, and by these presents accepts and confirms its
liability under said Note, security instruments and other collateral documents, with the terms as herein modified.

Borrower also agrees that this is a modification/revision only and not a novation; and except as herein provided, all the
terms and conditions of said Note and all other agreements, collateral securing said Note as well as all guarantees shall remain
in full force and effect.

Borrower further agrees that the foregoing Modification shall in no way affect or otherwise release any collateral held by
Lender as security to said Note; but acknowledges and agrees that all collateral held by Lender as security to said Note shall
continue to secure the Note to the same extent and in the same manner as if the foregoing Modification had not been affected.

IN WITNESS WHEREOF, the parties have executed this instrument the ___15th___ day of ___FEBRUARY   2005___.

Borrower: _____          Lender: COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
CLARENCE O LEVERETTE

_____          By: _____
MERLINE W. LEVERETTE

_____

JHA FOMS05 6/02
Page 1 of 1

MAE02

# MODIFICATION AGREEMENT

STATE OF ___Mississippi___          LOAN NO. ⬤6947 _____

COUNTY OF ___Jones___

THIS AGREEMENT between CLARENCE O LEVERETTE
MERLINE W. LEVERETTE _____ (Borrower) and

___COMMUNITY BANK, ELLISVILLE, MISSISSIPPI___ (Lender),

    WITNESSETH, That

    WHEREAS, Lender has heretofore made a loan to Borrower in the principal amount of _____

Four hundred forty five thousand & no/100 _____ DOLLARS ( $445,000.00 )

evidenced by Borrower's Note dated ___03/04/02___ with current balance of ___$259,711.15___ ; and

    WHEREAS, Borrower has requested Lender to modify certain provisions and conditions pertaining to the aforesaid Loan; and

    NOW THEREFORE, In consideration of the premises and other good and valuable consideration, Borrower agrees with Lender as follows, to-wit:

    A) To change maturity date from ___N/A___ to ___N/A___ .

    B) To change next payment date from ___N/A___ to ___N/A___ .

    C) To change fixed APR Rate from ___8.00___ to ___6.50___ .

    D) Line of Credit: ___N/A___ E) I do not want Credit Life _____ X _____ .

THIS MODIFICATION IS BEING DONE IN ORDER TO CHANGE THE PAYMENT AMOUNT
DUE TO ADDING BACK TAXES AND FORCE PLACED INSURANCE. THE PAYMENT WILL
CHANGE TO $40,242.00 BEGINNING 03/04/09. THE VARIABLE RATE TERMS AND
REVIEW DATE WILL BE UNCHANGED. THE INTEREST RATE WILL CHANGE FROM
8.00% TO 6.5% UNTIL THE NEXT REVIEW DATE OF 03/03/11.

    Borrower hereby authorizes and directs Lender to take any action necessary to conform the original Note, security instruments and other collateral documents to the terms as herein modified, and by these presents accepts and confirms its liability under said Note, security instruments and other collateral documents, with the terms as herein modified.

    Borrower also agrees that this is a modification/revision only and not a novation; and except as herein provided, all the terms and conditions of said Note and all other agreements, collateral securing said Note as well as all guarantees shall remain in full force and effect.

    Borrower further agrees that the foregoing Modification shall in no way affect or otherwise release any collateral held by Lender as security to said Note; but acknowledges and agrees that all collateral held by Lender as security to said Note shall continue to secure the Note to the same extent and in the same manner as if the foregoing Modification had not been affected.

    IN WITNESS WHEREOF, the parties have executed this instrument the ___3rd___ day of ___APRIL___ ___2008___ .

Borrower: _____         Lender: COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
    CLARENCE O LEVERETTE

_____                     By: _____ SVP
MERLINE W. LEVERETTE

JHA FOMS08 03/05
Page 1 of 1

Loan #  ●●6947

() **227**

This document was prepared by .....COMMUNITY..BANK,..ELLISVILLE,..MISSISSIPPI...........................
....P...O...BOX..265..LAUREL,..MS...39441.......(601)..649-5770.............................. (name, address, phone number)

———— State of Mississippi ————  ———— Space Above This Line For Recording Data ————

## REAL ESTATE DEED OF TRUST
☐ This Security Instrument secures a line of credit.

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is .......3/04/2002...........................
and the parties, their addresses and tax identification numbers, if required, are as follows:
GRANTOR: CLARENCE O LEVERETTE
  MERLINE W. LEVERETTE
  P O BOX 420
  STATE LINE MS 39362

☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and
acknowledgments.

TRUSTEE: WAYNE DAVIS

LENDER: COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
  P. O. BOX 250
  ELLISVILLE, MS  39437

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to
secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably
grants, bargains and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described
property:
INDEXING: W1/2 OF NW1/4, SECTION 29, TOWNSHIP 6 NORTH, RANGE 5 WEST;
  E1/2 OF NE1/4, SECTION 30, TOWNSHIP 6 NORTH, RANGE 5 WEST,
WAYNE COUNTY, MISSISSIPPI

SEE ATTACHED EXHIBIT FOR LEGAL DESCRIPTION

The property is located in ....WAYNE......................................... at ...........................................
  (County)
.621..NOLLARD..BEND..RD......................., ..STATE..LINE..........................., Mississippi ..39362...............
  (Address)                              (City)                              (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all
diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches,
reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now,
or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
not exceed $ ....445,000.00......................... . This limitation of amount does not include interest and other fees
and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under
the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this
Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
  A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(s) or other evidence of debt described
  below and all their extensions, renewals, modifications or substitutions. *(When referencing the debts below it is
  suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*
on promissory note made to CLARENCE O LEVERETTE
and MERLINE W. LEVERETTE
maturing on 3/04/17  in the amount of   $445,000.00

** This loan contains a variable rate clause.

MISSISSIPPI - AGRICULTURAL/COMMERCIAL DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)   *(page 1 of 6)*
ExSeres ©1994 Bankers Systems, Inc., St. Cloud, MN Form AG/CO-DT-MS 12/7/2000

') 228

B. All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced and whether or not such future advances or future obligations are incurred for any purpose that was related or unrelated to the purpose of the debt. If more than one person signs this Security Instrument, each Grantor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Grantor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

6. **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, bargain and sell the Property to Trustee, in trust, with power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Grantor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Lender any notices that Grantor receives from the holder.
   C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Grantor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
    However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Grantor is duly organized and validly existing in the Grantor's state of incorporation or organization. Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Security Instrument by Grantor and the obligation evidenced by the Secured Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such

*CoL MWL.*

*(page 2 of 6)*

Experts ©1994 Bankers Systems, Inc., St. Cloud, MN   Form AG/CO-DT-MS  12/7/2000

**17. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other conditions and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by Mississippi Code §89-1-55, in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all monies advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or in equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**18. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

**19. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance that has been released on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

©1994 Bankers Systems, Inc., St. Cloud, MN Form AGCO-MS 12/7/2000

229

230

replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor shall not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

**13. AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**14. ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, bargains, and assigns to Trustee, in trust for the benefit of Lender as additional security all the right, title, and interest in the following (all referred to as Property).
  A. Existing or future leases, subleases, licenses, guaranties, and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications, or replacements (all referred to as Leases).
  B. Rents, issues, and profits (all referred to as Rents), including but not limited to security deposits, minimum rent, percentage rent, additional rent, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims, which Assignor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property.

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy, and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting, and preserving the Property, and other necessary expenses.

Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses, and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe, and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender or Trustee may, at Lender's option, enforce compliance. Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so required) without Lender's consent. Grantor will not assign, compromise, subordinate, or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect, or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss, or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**15. LEASEHOLDS; CONDOMINIUMS; TIME-SHARES; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium, time-share or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**16. DEFAULT.** Grantor will be in default if any of the following occur:
  A. Any party obligated on the Secured Debt fails to make payment when due;
  B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;
  C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
  D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;
  E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
  F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
  G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

*CoL. M.W.L.* ____    *(page 3 of 6)*

ExSere̱s   © 1994 Bankers Systems, Inc., St. Cloud, MN  Form AG/CO-DT-MS  12/7/2000

ATTACHED TO AND FORMING PART DEED OF TRUST
DATED    3/04/02              IN THE AMOUNT OF    445000.00         () **231**
AND IN THE NAME OF   CLARENCE O LEVERETTE
MERLINE W. LEVERETTE
BORROWER FURTHER AGREES THAT THE LOAN(S) SECURED BY THIS INSTRUMENT
WILL BE IN DEFAULT SHOULD ANY LOAN PROCEEDS BE USED FOR A PURPOSE THAT
WILL CONTRIBUTE TO EXCESSIVE EROSION OF HIGHLY ERODIABLE LAND OR TO
THE CONVERSION OF WETLAND TO PRODUCE OR TO MAKE POSSIBLE THE
PRODUCTION OF AN AGRICULTURAL COMMODITY, AS FURTHER EXPLAINED IN 7
CFR PART 1940, SUBPART G, EXHIBIT M.

CLARENCE O LEVERETTE

MERLINE W. LEVERETTE

EXHIBIT "A"

() 232

TRACT I:
Commencing at a point 842 feet North of the SW Corner of the
SE1/4 of the NE1/4 of Section 30, Township 6 North, Range 5
West, thence North for a distance of 248 feet, thence East for a
distance of 2,640 feet, thence South for a distance of 248 feet,
thence West for a distance of 2,640 feet to the Point of Beginning,
containing 15 acres, more or less, and being situated in the E ½ of
the NE1/4 of Section 30, and the W ½ of the NW1/4 of Section 29,
Township 6 North, Range 5 West, Wayne County, Mississippi.

TRACT II:
Commencing at a point situated 1,586 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, run thence North for a distance of 248 feet, thence East for
a distance of 2,640 feet, thence South for a distance of 248 feet,
thence West for a distance of 2,640 feet to the Point of Beginning,
containing 15 acres, more or less, and being situated in the E ½ of
the NE1/4 of Section 30, and the W ½ of the NW1/4 of Section 29,
all in Township 6 North, Range 5 West, Wayne County, Mississippi.

TRACT III:
A parcel of land situated in the E ½ of the NE1/4 of Section 30, and
W ½ of NW1/4 of Section 29, Township 6 North, Range 5 West,
Wayne County, Mississippi, described as follows: Commencing at
a point 594 feet North and 89 feet West of the SE Corner of the
SE1/4 of the NE1/4 of said Section 30, thence run North for a
distance of 248 feet, thence run East for a distance of 1,409 feet,
thence run South for a distance of 248 feet, thence West for a
distance of 1,409 feet, to the Point of Beginning, containing 8 acres,
more or less, and all lying and being in Wayne County, Mississippi.

TRACT IV:
Commencing at a point situated 1338.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, run thence North for a distance of 248.0 feet, thence East
for a distance of 2,640.0 feet, thence South for a distance of 248.0
feet, thence West for a distance of 2,640.0 feet to the Point of
Beginning.  Containing 15.0 acres, more or less, and being in the
E½ of the NE1/4 of Section 30, and the W ½ of the NW1/4 of
Section 29, Township 6 North, Range 5 West, Wayne County,
Mississippi.

TRACT V:
A parcel of land located in the E ½ of the NE1/4 of Section 30,
Township 6 North, Range 5 West, Wayne County, Mississippi, more
particularly described by metes and bounds as follows, to-wit:
Commence at a point situated 1090.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of said Section 30, thence run North
248.0 feet, thence run East 1055.0 feet, thence run South 248.0
feet, thence run West 1055.0 feet, back to the Point of Beginning,
containing 6.0 acres, more or less.

TRACT VI:
A parcel of land located in the E ½ of the NE1/4 of Section 30,
Township 6 North, Range 5 West, Wayne County, Mississippi, and
the W ½ of the NW1/4 of Section 29, Township 6 North, Range 5
West, Wayne County, Mississippi, more particularly described by
metes and bounds as follows, to-wit:
Commence at a point situated 1090.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of said Section 30, thence run East
1055.0 feet to the Point of Beginning, thence run North 248.0 feet,
thence run East 1055.0 feet, thence run South 248.0 feet, thence
run West 1055.0 feet, back to the Point of Beginning, containing 6.0
acres, more or less.

ATTACHED TO AND FORMING PART OF THE DEED OF TRUST DATED MARCH 4, 2002,
IN THE NAMES OF CLARENCE O. LEVERETTE AND MERLINE W. LEVERETTE, IN THE
AMOUNT OF $445,000.00

SIGNED FOR THE PURPOSE OF IDENTIFICATION

_____
CLARENCE O. LEVERETTE

_____
MERLINE W. LEVERETTE

EXHIBIT "A-1"

() 233

TRACT VII:
A parcel of land located in the W ½ of the NW1/4 of Section 29,
Township 6 North, Range 5 West, Wayne County, Mississippi, more
particularly described by metes and bounds as follows, to-wit:
Commencing at a point situated 1090.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, Wayne County, Mississippi, and run East 2110.0 feet to the
Point of Beginning, thence run North 248.0 feet, thence run East
530.0 feet, thence run South 248.0 feet, thence run West 530.0
feet, back to the Point of Beginning, containing 3.0 acres, more or
less.

TRACT VIII:
A parcel of land located in the E ½ of the NE1/4 of Section 30,
Township 6 North, Range 5 West, Wayne County, Mississippi, more
particularly described by metes and bounds as follows, to-wit:
Commencing at a point situated 1834.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, Wayne County, Mississippi, and run North 330.0 feet,
thence run East 400.0 feet, thence run South 330.0 feet, thence run
West 400.0 feet, back to the Point of Beginning, containing 3.0
acres, more or less.

TRACT IX:
A parcel of land located in the E ½ of the NE1/4 of Section 30,
Township 6 North, Range 5 West, Wayne County, Mississippi, more
particularly described by metes and bounds as follows, to-wit:
Commencing at a point situated 1834.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, Wayne County, Mississippi, and run East 400.0 feet to the
Point of Beginning, thence run North 330.0 feet, thence run East
800.0 feet, thence run South 330.0 feet, thence run West 800.0 feet
back to the Point of Beginning, containing 6.0 acres, more or less.

TRACT X:
A parcel of land located in the E ½ of the NE1/4 of Section 30,
Township 6 North, Range 5 West, and the W ½ of the NW1/4 of
Section 29, Township 6 North, Range 5 West, Wayne County,
Mississippi, more particularly described by metes and bounds as
follows, to-wit:
Commencing at a point situated 1834.0 feet North of the SW Corner
of the SE1/4 of the NE1/4 of Section 30, Township 6 North, Range
5 West, Wayne County, Mississippi, and run East 1200.0 feet to the
Point of Beginning, thence run North 330.0 feet, thence run East
120.0 feet, thence run South 160.0 feet, thence run East 1320.0
feet, thence run South 170.0 feet, thence run West 1440.0 feet,
back to the Point of Beginning, containing 6.0 acres, more or less.

### INDEXING INSTRUCTIONS
Index the above described property as follows:
W1/2 of NW1/4, Section 29, Township 6 North, Range 5 West;
E1/2 of NE1/4, Section 30, Township 6 North, Range 5 West;
Wayne County, Mississippi.

ATTACHED TO AND FORMING PART OF THE DEED OF TRUST DATED MARCH 4, 2002,
IN THE NAMES OF CLARENCE O. LEVERETTE AND MERLINE W. LEVERETTE, IN THE
AMOUNT OF $445,000.00.

SIGNED FOR THE PURPOSE OF IDENTIFICATION

_____
CLARENCE O. LEVERETTE

_____
MERLINE W. LEVERETTE

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response or remediation costs, penalties and expenses, including without limitation all costs of litigation and attorney's fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of any Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. CONDEMNATION. Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. INSURANCE. Grantor agrees to maintain insurance as follows:
A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payments. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

C. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

22. ESCROW FOR TAXES AND INSURANCE. Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

23. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

24. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND. All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the heirs, successors and assigns of Grantor and Lender.

25. APPLICABLE LAW; SEVERABILITY; INTERPRETATION. This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

26. SUCCESSOR TRUSTEE. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

27. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. WAIVER. Except to the extent prohibited by law, Grantor waives all appraisement rights relating to the Property.

ExperE © 1994 Bankers Systems, Inc., St. Cloud, MN Form AGCO-DT-KS 12/7/2000    (page 8 of 8)

235

**29. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues, and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

**30. OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released pursuant to Miss. Code Ann. § 89-5-21.

☐ **Agricultural Property.** Grantor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Grantor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Renewal and Extension.** This Deed of Trust is given and taken in renewal and extension of a deed of trust dated the .......................... day of .............................................. and recorded in Book .......................... page .......................... deed records .................................................... County, Mississippi, and is in no way intended to void the said deed of trust or impair the security thereof.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: ..............................................    Entity Name: ..............................................

*(Signature)* CLARENCE O LEVERETTE    *(Date)* 3/07/02    *(Signature)* MERLINE W. LEVERETTE    *(Date)* 3-04-02

*(Signature)*    *(Date)*    *(Signature)*    *(Date)*

**ACKNOWLEDGMENT:**

*(Individual)* STATE OF ..MISSISSIPPI........................, COUNTY OF ..JONES................................. } ss.
Personally appeared before me, the undersigned authority in and for the said county and state, on this
..........4.................. day of ...MARCH....2002.................. within my jurisdiction, the within named by
....CLARENCE..O..LEVERETTE........................MERLINE..N...LEVERETTE............................ who
acknowledged that he/she/they executed the above and foregoing instrument.
My commission expires:

*(Seal)*
MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES NOV. 20, 2004

*Carolyn W. Bryant*
*(Notary Public)*

*(Business or Entity Acknowledgment)* STATE OF ........................, COUNTY OF .............................................. } ss.
Personally appeared before me, the undersigned authority in and for the said county and state, on this
.......................... day of .............................................. within my jurisdiction, the within named
.............................................. who
acknowledged to me that he/she is ..............................................

I CERTIFY THIS INSTRUMENT WAS 10:13 3 . 8 2002
FILED FOR RECORD
IN DT BOOK# 1082 PAGE# 927
WAYNE COUNTY    MARLON WEST, Chy. Ck.
WAYNESBORO,    by Tameka Everett DC
MISSISSIPPI

My commission expires:

*(Seal)*    ..............................................
*(Notary Public)*

*(page 6 of 6)*

Exper$a © 1994 Bankers Systems, Inc., St. Cloud, MN Form AG/CO-DT-MS 12/7/2000

**UCC-01**

**State of Mississippi JCC-1**
**Financing Statement**

6947

**1. Debtors** (Last Name first for individuals)

Book & Page: _____    Filed with: SEC. OF STATE

| LEVERETTE | CLARENCE O | | LEVERETTE | MERLINE | |
|---|---|---|---|---|---|
| Last Name | First Name | Middle Name | Last Name | First Name | Middle Name |

637 WOODLANE BEND ROAD
Mailing Address

637 WOODLAND BEND ROAD
Mailing Address

| STATE LINE | MS | 77 | 39362 0000 | STATE LINE | MS | 77 | 39362 0000 |
|---|---|---|---|---|---|---|---|
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |

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
Tax ID/SSN

☐ Transmitting Utility

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
Tax ID/SSN

**2. Secured Party** (Last Name first for individuals)
COMMUNITY BANK,
ELLISVILLE, MISSISSIPPI
Business Name

**3. Assignee** (Last Name first for individuals)

Business Name

P. O. BOX 265
Mailing Address

Mailing Address

| LAUREL | MS | 34 | 39441 | City | | State | Cty Cd | ZIP |
|---|---|---|---|---|---|---|---|---|
| City | State | Cty Cd | ZIP | | | | | |

64-0203080
Tax ID/SSN

Tax ID/SSN

**4. This financing statement covers the following types (or items) of property:**

SEE ATTACHED UCCE FOR DESCRIPTION OF COLLATERAL

INCLUSION OF THE PROCEEDS OF THIS STATEMENT DOES NOT AUTHORIZE DEBTOR TO SELL OR
OTHERWISE DISPOSE OF THIS COLLATERAL.

**5. Check if this statement is filed without the Debtor's signature to perfect a security interest in collateral**

☐ already subject to a security interest in another jurisdiction when it was brought into this state or when Debtor's location was changed to this state

☐ which is proceeds if the security interest in the original collateral was perfected

☐ acquired after a change of name, identity, or corporate structure of the Debtor

☐ where the original filing has lapsed

☐ if lien to secure payment of royalty proceeds (effective 1 year)

Office Use Only
01530091
06/04/2001
08:00:00

**6. Check if covered:** ☒ Products of Collateral

**7. Number of additional sheets attached:** ☐

COMMUNITY BANK,

*Clarence Leverette*
Signature of Debtor    CLARENCE O LEVERETTE

*Wendel Turner by CWB*
Signature of Secured Party

*Merline W. Leverette*
Signature of Debtor    MERLINE W. LEVERETTE

Signature of Secured Party
(Required only when filed without Debtor Signature)

FILED
06/04/2001
ERIC CLARK
Secretary of State
State of Mississippi

Bankers Systems, Inc., St. Cloud, MN Form UCC-1-LAZ-MS 2/12/96

Accepted Filing: 01530091 [Invoice: 847638]





**State of Mississippi UCC-E**
**Financing Statement**

### UCC-E

## Extension Sheet for Uniform Commercial Code Forms UCC-1, UCC-1F, UCC-3, UCC-3F, or UCC-11

INCLUSION OF THE PROCEEDS OF THIS STATEMENT DOES NOT AUTHORIZE
DEBTOR TO SELL OR OTHERWISE DISPOSE OF THIS COLLATERAL.

HOUSES AND EQUIPMENT INCLUDING ALL EQUIPMENT IN AND ABOUT SAID BUILD-
INGS AND POULTRY HOUSES, USED IN AND ABOUT THE OPERATION OF SAME FOR
THE GROWING, PRODUCING, AND MARKETING OF POULTRY AND POULTRY PRODUCTS
THEREON AND THEREFORE, INCLUDING TOOLS, IMPLEMENTS, FIXTURES,
APPLIANCES, FEEDERS, TROUGHS, HEATING SYSTEMS, PIPES AND ALL OTHER
ITEMS OF EVERY NATURE AND DESCRIPTION WHICH ARE LOCATED ON OR
CONNECTED WITH SAID PREMISES USED IN AND ABOUT THE PRODUCTION AND
MARKETING OF SAID POULTRY.

ASSIGNMENT OF WAGES OF ALL MONIES, WAGES, CLAIMS FOR WAGES, AND/OR
COMMISSIONS, DUE OR TO BECOME DUE.

EQUIPMENT: ALL EQUIPMENT INCLUDING, BUT NOT LIMITED TO, ALL MACHINERY,
VEHICLES, FURNITURE, FIXTURES, MANUFACTURING EQUIPMENT, FARM MACHINERY
AND EQUIPMENT, SHOP EQUIPMENT, OFFICE AND RECORDKEEPING EQUIPMENT, AND
PARTS AND TOOLS. ALL EQUIPMENT DESCRIBED IN A LIST OR SCHEDULE WHICH I
GIVE TO YOU WILL ALSO BE INCLUDED IN THE SECURED PROPERTY, BUT SUCH A
LIST IS NOT NECESSARY FOR A VALID SECURITY INTEREST IN MY EQUIPMENT.

_____

**Signature of Debtor**
CLARENCE O LEVERETTE
MERLINE W. LEVERETTE

**Signature of Secured Party**
Sheet _____ of _____

Bankers Systems, Inc., St. Cloud, MN  Form UCC-E-LAZ-MS  2/9/66

Accepted Filing: 01530091 [Invoice: 847638]

**UCC-01**

**State of Mississippi   UCC-1**
**Financing Statement**

**1. Debtors (Last Name first for individuals)**

Book & Page: _____     Filed with: **6947**

CHANCERY CLERK
WAYNE

| LEVERETTE | CLARENCE | O. | | LEVERETTE | MERLINE | |
|---|---|---|---|---|---|---|
| Last Name | First Name | Middle Name | | Last Name | First Name | Middle Name |

| 637 WOODLANE BEND ROAD | | | | 637 WOODLAND BEND ROAD | | |
|---|---|---|---|---|---|---|
| Mailing Address | | | | Mailing Address | | |

| STATE LINE | MS | 77 | 39362 0000 | STATE LINE | MS | 77 | 39362 0000 |
|---|---|---|---|---|---|---|---|
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |

| 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 | ☐ Transmitting Utility | 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 |
|---|---|---|
| Tax ID/SSN | | Tax ID/SSN |

**2. Secured Party (Last Name first for individuals)**
COMMUNITY BANK,
ELLISVILLE, MISSISSIPPI

**3. Assignee (Last Name first for individuals)**

| Business Name | | | | Business Name |
|---|---|---|---|---|

P. O. BOX 265

| Mailing Address | | | | Mailing Address |
|---|---|---|---|---|

| LAUREL | MS | 34 | 39441 | | | | |
|---|---|---|---|---|---|---|---|
| City | State | Cty Cd | ZIP | City | State | Cty Cd | ZIP |

| 64-0203080 | | |
|---|---|---|
| Tax ID/SSN | | Tax ID/SSN |

**4. This financing statement covers the following types (or items) of property:**

SEE ATTACHED UCCE FOR DESCRIPTION OF COLLATERAL

INCLUSION OF THE PROCEEDS OF THIS STATEMENT DOES NOT AUTHORIZE DEBTOR TO SELL OR
OTHERWISE DISPOSE OF THIS COLLATERAL.

**5. Check if this statement is filed without the Debtor's signature to perfect a security interest in collateral**

☐ already subject to a security interest in another jurisdiction when it was brought into this state or when Debtor's location was changed to this state

☐ which is proceeds if the security interest in the original collateral was perfected

☐ acquired after a change of name, identity, or corporate structure of the Debtor

☐ where the original filing has lapsed

☐ if lien to secure payment of royalty proceeds (effective 1 year)

*Office Use Only*
01-1023
10/4/01 1:39
Wayne Co. MS
Marlon West
Chancery Clerk
By: Tamelia Guera

**6. Check if covered:** ☒ Products of Collateral

**7. Number of additional sheets attached:** ☐

COMMUNITY BANK,

| Signature of Debtor   CLARENCE O LEVERETTE | Signature of Secured Party |
|---|---|

| Signature of Debtor   MERLINE W. LEVERETTE | Signature of Secured Party (Required only when filed without Debtor Signature) |
|---|---|

Bankers Systems, Inc., St. Cloud, MN Form UCC-1-LAZ-MS  2/12/96

 **UCC-E**

**State of Mississippi UCC-E**
**Financing Statement**



## Extension Sheet for Uniform Commercial Code Forms UCC-1, UCC-1F, UCC-3, UCC-3F, or UCC-11

INCLUSION OF THE PROCEEDS OF THIS STATEMENT DOES NOT AUTHORIZE DEBTOR TO SELL OR OTHERWISE DISPOSE OF THIS COLLATERAL.

HOUSES AND EQUIPMENT INCLUDING ALL EQUIPMENT IN AND ABOUT SAID BUILD-INGS AND POULTRY HOUSES, USED IN AND ABOUT THE OPERATION OF SAME FOR THE GROWING, PRODUCING, AND MARKETING OF POULTRY AND POULTRY PRODUCTS THEREON AND THEREFORE, INCLUDING TOOLS, IMPLEMENTS, FIXTURES, APPLIANCES, FEEDERS, TROUGHS, HEATING SYSTEMS, PIPES AND ALL OTHER ITEMS OF EVERY NATURE AND DESCRIPTION WHICH ARE LOCATED ON OR CONNECTED WITH SAID PREMISES USED IN AND ABOUT THE PRODUCTION AND MARKETING OF SAID POULTRY.

ASSIGNMENT OF WAGES OF ALL MONIES, WAGES, CLAIMS FOR WAGES, AND/OR COMMISSIONS, DUE OR TO BECOME DUE.

EQUIPMENT: ALL EQUIPMENT INCLUDING, BUT NOT LIMITED TO, ALL MACHINERY, VEHICLES, FURNITURE, FIXTURES, MANUFACTURING EQUIPMENT, FARM MACHINERY AND EQUIPMENT, SHOP EQUIPMENT, OFFICE AND RECORDKEEPING EQUIPMENT, AND PARTS AND TOOLS. ALL EQUIPMENT DESCRIBED IN A LIST OR SCHEDULE WHICH I GIVE TO YOU WILL ALSO BE INCLUDED IN THE SECURED PROPERTY, BUT SUCH A LIST IS NOT NECESSARY FOR A VALID SECURITY INTEREST IN MY EQUIPMENT.

Signature of Debtor
CLARENCE O LEVERETTE

MERLINE W. LEVERETTE

Signature of Secured Party
Sheet _____ of _____

Bankers Systems, Inc., St. Cloud, MN  Form UCC-E-LAZ-MS  2/9/86

Reprint Page 1 - 11/3/2011, 8:27am   Archive Copy

Reprint Page 1 - 11/10/2009, 12:56pm   Archive Copy

File Number: 20040095629H
Date Filed: 05/12/2004 09:00 AM
Eric Clark
Secretary of State

572782A

## Mississippi - UCC1 FINANCING STATEMENT (IN LIEU)

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

```
  COMMUNITY BANK, ELLISVILLE, MS
  P.O. BOX 265
  LAUREL, MS 39441
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| LEVERETTE | CLARENCE | O | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | 1d. COUNTY # |
|---|---|---|---|---|
| 637 WOODLANE BEND ROAD | STATE LINE | MS | 39362 | 77 |

ADD'L INFO RE | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATION ID #, if any
ORGANIZATION DEBTOR

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names    ☐ NONE

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | 2d. COUNTY # |
|---|---|---|---|---|

ADD'L INFO RE | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATION ID #, if any
ORGANIZATION DEBTOR

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)    ☐ NONE

3a. ORGANIZATION'S NAME
COMMUNITY BANK, ELLISVILLE

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY # |
|---|---|---|---|---|
| P.O. BOX 265 | LAUREL | MS | 39441 | 034 |

4. The FINANCING STATEMENT covers the following collateral

**THE FINANCING STATEMENT IS AN "IN LIEU OF CONTINUATION" FOR THE FOLLOWING STATEMENTS, EACH OF WHICH SHALL REMAIN EFFECTIVE:**

| File Date | File Number | Original Filing Office | File Date | File Number | Original Filing Office |
|---|---|---|---|---|---|
| 6/4/01 | 01-672 | WAYNE COUNTY | | | |

See Addendum #18 for collateral    ☐

5. ALTERNATIVE DESIGNATION [if applicable]    ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ SELLER/BUYER   ☐ AG. LIEN   ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   ☐ ADDITIONAL FEE   ☐ Check to REQUEST SEARCH REPORT(S) on Debtor(s)   ☐ All Debtors   ☐ Debtor 1   ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

Filing Office:  ~~xxxxx~~ 6947

FILING OFFICE COPY — MISSISSIPPI UCC FINANCING STATEMENT (FORM UCC1) (REV. 10/01)

**File Number: 20090024493E**
**Date Filed: 02/12/2009 02:32 PM**
**C. Delbert Hosemann, Jr.**
**Secretary of State**

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Community Bank, Ellisville, Mississippi (601) 649-5770

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Community Bank, Ellisville, Mississippi
PO Box 265
Laurel MS 39441
EMail: christy.sumrall@communitybank.net Fax: (601)
649-3237

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| 20040085629H | ☐ |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial)

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record

☐ CHANGE name and/or address     ☐ DELETE name     ☐ ADD name

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| LEVERETTE | CLARENCE | O | |

8. AMENDMENT (COLLATERAL CHANGE)

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned

9. NAME of SECURED PARTY of RECORD AUHTORIZING THIS AMENDMENT   ☐ DEBTOR authorizing this amendment

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| COMMUNITY BANK, ELLISVILLE, MISSISSIPPI | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
8947

note #3738

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 3738 | Clarence O Leverette | LAA0694 | 09/04/09 | |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $21,877.47 | Not Applicable | 7.000% | 09/04/10 | Agricultural |
| | | Creditor Use Only | | |

# PROMISSORY NOTE AND SECURITY AGREEMENT
### (Agricultural - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note and Security Agreement (Loan Agreement) is September 4, 2009. The parties and their addresses are:

**LENDER:**
COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
009 N 16th Avenue
Laurel, MS 39440
Telephone: 601-649-5770

**BORROWER:**
CLARENCE O LEVERETTE
PO Box 420
State Line, MS 39362-0420

MERLINE W LEVERETTE
PO Box 420
State Line, MS 39362-0420

**1. DEFINITIONS.** As used in this Loan Agreement, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together. "You" and "Your" refer to the Lender.

**B. Loan Agreement.** Loan Agreement refers to this combined Note and Security Agreement, and any extensions, renewals, modifications and substitutions of this Loan Agreement.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Loan Agreement.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $21,877.47 (Principal) plus interest from September 4, 2009 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Loan Agreement at the rate of 7.000 percent (Interest Rate).

**A. Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Loan Agreement. In such event, interest will accrue on the unpaid Principal balance of this Loan Agreement at the maximum interest rate allowed by state or federal law, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Loan Agreement is authorized by the Mississippi usury laws under Miss. Code Ann. Title 75, Chapter 17.

**D. Accrual.** Interest accrues using an Actual/365 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Loan Agreement.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

**A. Late Charge.** If a payment is more than 15 days late, I will be charged 4.000 percent of the Unpaid Portion of Payment or $5.00, whichever is greater. However, this charge will not be greater than $50.00. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Loan Agreement is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Loan Agreement, including the terms and conditions under which the maturity of this Loan Agreement may be accelerated. When I sign this Loan Agreement, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Loan Agreement in a single payment of all unpaid Principal and accrued interest on September 4, 2010.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is Form - Agricultural Purposes.

3738
Mississippi Promissory Note and Security Agreement
MS/4XXXJAY02004417000002150530804O9N                         Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™                         Initials 



**10. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section, and by separate security instruments prepared together with this Loan Agreement as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Deed Of Trust - 623 Woulard Bend River Rd | Clarence O Leverette, Morlene W Leverette | 03/04/2002 |

and by the following, previously executed, security instruments or agreements:  , Deed of Trust Dated & Security Agreement Dated 03/04/2002.

**11. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

(1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

(2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Security Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

**B. Security Interest.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**C. Property Description.** The Property subject to this Security Agreement is described as follows:

(1) Equipment. All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give will also be included in the Property, but such a list is not necessary for a valid security interest in my equipment.

(2) Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Mobile Home of Make: Crown, Year: 1996, Model: 6031, Length: 84., Width: 16., Serial No.: CHAL1259, Additional Description: 1996 Crown 6031.

**D. Duties Toward Property.**

(1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) Use, Location, and Protection of the Property. I will keep the Property in my possession and in good repair. I will use it only for agricultural purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given in the Identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) Selling, Leasing or Encumbering the Property. I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

(4) Additional Duties Specific to Mobile Homes. If the Mobile Home portion of the Property is titled, I am required to obtain your prior written consent to eliminate the title and declare the Mobile Home as real estate. You may withhold consent in your sole discretion.

**E. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.



' (9) make an entry on my books and records showing the existence of this Agreement.

✓    If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

F. Name and Location. My name indicated in the DATE AND PARTIES section is my exact legal name. Clarence O Leverette is an individual with a principal residence located in Mississippi. Merline W Leverette is an individual with a principal residence located in Mississippi. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

G. Perfection of Security Interest. I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting my security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers By Borrower. In addition, I, and any party to this Loan Agreement, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement.

(1) You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Loan Agreement.

(4) You, or any institution participating in this Loan Agreement, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Loan Agreement, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. APPLICABLE LAW.** This Loan Agreement is governed by the laws of Mississippi, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**16. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Loan Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Loan Agreement may not be amended or modified by oral agreement. No amendment or modification of this Loan Agreement is effective unless made in writing and executed by you and me. This Loan Agreement and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Loan Agreement.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**22. SIGNATURES.** By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

Initials 

BORROWER:

Clarence O Leverette
Individually

Marlene W Leverette
Individually

Reprint Page 5 - 11/3/2011, 8:27am    Archive Copy

**APPENDIX: FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Loan Agreement, I agree to pay, or have paid, these additional fees and charges.

Nonrefundable Fees and Charges. The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.

Document Preparation. A(n) Document Preparation fee of $125.00 payable from the loan proceeds.

Initials 

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| ***3738 | Clarence O Leverette | LAA0694 | 09/04/09 | |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $21,877.47 | Not Applicable | 7.000% | 09/04/10 | Agricultural |
| | | Creditor Use Only | | |

# COMMERCIAL LOAN AGREEMENT
### Agricultural - Single Advance Term Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is September 4, 2009. The parties and their addresses are as follows:

**LENDER:**
   **COMMUNITY BANK, ELLISVILLE, MISSISSIPPI**
   909 N 16th Avenue
   Laurel, MS 39440

**BORROWER:**
   **CLARENCE O LEVERETTE**
   PO Box 420
   State Line, MS 39362-0420

   **MERLINE W LEVERETTE**
   PO Box 420
   State Line, MS 39362-0420

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

**A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

**B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

**C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

**F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. SINGLE ADVANCE.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a term note in the amount of $21,877.47 (Principal). I will receive the funds from this Loan in one advance. No additional advances are contemplated, except those made to protect and preserve your interests as provided in this Agreement or other Loan Documents.

**3. MATURITY DATE.** I agree to fully repay the Loan by September 4, 2010.

**4. WARRANTIES AND REPRESENTATIONS.** I represent and warrant that I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party.

**A. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

**B. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**C. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**D. Loan Purpose.** The purpose of this Loan is Farm - Agricultural Purposes.

**E. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**F. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**G. Legal Disputes.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**H. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**I. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**J. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**5. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date the financial information was prepared.

**B. Frequency.** In addition to the financial statements provided to you prior to closing, I will provide you with current financial statements on an annual basis, or as otherwise requested by you, until I have performed all of my obligations under the Loan and you terminate the Loan in writing.

**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within days after your request.

**6. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

    **(1)** You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

    **(2)** You may discuss my affairs, finances and business with any one who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

    **(3)** You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have paid all my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of their knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

3738
Mississippi Commercial Loan Agreement
MS/4XXXJAY02004417000021505309040 9Y

Wolters Kluwer Financial Services ©1996, 2009 Bankers Systems™

Initials _____
Page 2

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default , or which, with the passage of time or giving of notice, or both, would constitute a default under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

**R. Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

**S. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**T. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**U. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**V. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserve for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**W. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**7. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or make possible the production of an agricultural commodity, as further explained by federal law.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**8. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Mississippi Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

H. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**9. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**10. APPLICABLE LAW.** This Agreement is governed by the laws of Mississippi, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**11. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement and the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**12. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**13. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**14. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**15. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

Clarence O Leverette
Individually

Marline W Leverette
Individually

note # 5284

You did not ask for this
note — sent anyway 'CAUSE

he owes us on this one

also. (equipment)

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 5284 | Clarence O Leveretto | LAA0694 | 08/09/09 | |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $28,230.00 | Not Applicable | 7.000% | 06/08/12 | Agricultural |
| | | Creditor Use Only | | |

## PROMISSORY NOTE AND SECURITY AGREEMENT
### (Agricultural - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note and Security Agreement (Loan Agreement) is June 8, 2009. The parties and their addresses are:

**LENDER:**
COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
909 N 16th Avenue
Laurel, MS 39440
Telephone: 601-649-6770

**BORROWER:**
CLARENCE O LEVERETTE
PO Box 420
State Line, MS 39362-0420

**1. DEFINITIONS.** As used in this Loan Agreement, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement, individually and together. "You" and "Your" refer to the Lender.

B. **Loan Agreement.** Loan Agreement refers to this combined Note and Security Agreement, and any extensions, renewals, modifications and substitutions of this Loan Agreement.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Loan Agreement.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

**2. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $20,230.00 (Principal) plus interest from June 8, 2009 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

**3. INTEREST.** Interest will accrue on the unpaid Principal balance of this Loan Agreement at the rate of 7.000 percent (Interest Rate).

A. **Interest After Default.** If you declare a default under the terms of the Loan, including for failure to pay in full at maturity, you may increase the Interest Rate payable on the outstanding Principal balance of this Loan Agreement. In such event, interest will accrue on the unpaid Principal balance of this Loan Agreement at the maximum Interest Rate allowed by state or federal law, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by state or federal law, whichever is greater. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Loan Agreement is authorized by the Mississippi usury laws under Miss. Code Ann. Title 75, Chapter 17.

D. **Accrual.** Interest accrues using an Actual/365 days counting method.

**4. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, the fees and charges listed on the APPENDIX: FEES AND CHARGES, which is attached to and made part of this Loan Agreement.

**5. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

A. **Late Charge.** If a payment is more than 15 days late, I will be charged 4.000 percent of the Unpaid Portion of Payment or $5.00, whichever is greater. However, this charge will not be greater than $50.00. I will pay this late charge promptly but only once for each late payment.

**6. GOVERNING AGREEMENT.** This Loan Agreement is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Loan Agreement, including the terms and conditions under which the maturity of this Loan Agreement may be accelerated. When I sign this Loan Agreement, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Loan Agreement in 3 payments. I will make 2 payments of $6,486.00 beginning on June 8, 2010, and on the same day each year thereafter. A single "balloon payment" of the entire unpaid balance of Principal and interest will be due June 8, 2012.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Loan Agreement. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is Farm - Agricultural Purposes.

Clarence O Leverette
Mississippi Promissory Note and Security Agreement
MS/4XXXJAY02004417000000209028060809N        ©1996 Bankers Systems, Inc., St. Cloud, MN Exprint


Initials
Page 1

**10. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement.

**11. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

(1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

(2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement. Nothing in this Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Any such commitment must be in writing.

This Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt for which you fail to give any required notice of the right of rescission. This Security Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices.

**B. Security Interest.** To secure the payment and performance of the Secured Debts, I give you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**C. Property Description.** The Property subject to this Security Agreement is described as follows:

(1) Specific Property. 1999 CB0 CASE TRACTOR S#1007980, 1969 JOHN DEERE TRACTOR S#TX13R115099R, 1995 THOMAS BOBCAST LOADER S#LE000020, 1995 CHEVROLET SPREADER TRUCK S#1GEC7D180FV210672, PULVERIZER S#333304 AND ASSIGNMENT OF ALL MONIES, WAGES, CLAIMS FOR WAGES AND/OR COMMISSIONS DUE OR TO BECOME DUE.

**D. Duties Toward Property.**

(1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) Use, Location, and Protection of the Property. I will keep the Property in my possession and in good repair. I will use it only for agricultural purposes. I will not change the specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) Selling, Leasing or Encumbering the Property. I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

**E. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.

(9) make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**F. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. My principal residence is located in Mississippi. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

©1996 Bankers Systems, Inc., St. Cloud, MN EXXXXXX   Initial    Page 2

Reprint Page 3 - 11/4/2011, 12:01pm ARCHIVE copy

**G. Perfection of Security Interest.** I authorize you to file a financing statement covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**12. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

**13. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Loan Agreement, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement.

(1) You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Loan Agreement.

(4) You, or any institution participating in this Loan Agreement, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Loan Agreement, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**C. Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**14. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**15. APPLICABLE LAW.** This Loan Agreement is governed by the laws of Mississippi, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Mississippi, unless otherwise required by law.

**16. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Loan Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

**17. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Loan Agreement may not be amended or modified by oral agreement. No amendment or modification of this Loan Agreement is effective unless made in writing and executed by you and me. This Loan Agreement and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**18. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Loan Agreement.

**19. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**20. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**21. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**22. SIGNATURES.** By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

Clarence O Leverette
Individually

**APPENDIX:  FEES AND CHARGES**

As described in the ADDITIONAL CHARGES section of the attached Loan Agreement, I agree to pay, or have paid, these additional fees and charges. Nonrefundable Fees and Charges.  The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.

  Document Preparation.  A(n) Document Preparation fee of $60.00 payable from the loan proceeds.

Clarence O Leverette
Mississippi Promissory Note and Security Agreement
MS/4XXXJAY02004417000002002B060809N

©1996 Bankers Systems, Inc., St. Cloud, MN

Initials
Page 4



| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| ⬤5204 | Clarence O Leverette | LAA0094 | 06/08/09 | |
| **NOTE AMOUNT** | **INDEX (w/Margin)** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $28,230.00 | Not Applicable | 7.000% | 06/08/12 | Agricultural |
| | | Creditor Use Only | | |

## COMMERCIAL LOAN AGREEMENT
### Agricultural - Single Advance Term Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is June 8, 2009. The parties and their addresses are as follows:

**LENDER:**
COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
909 N 16th Avenue
Laurel, MS 39440

**BORROWER:**
CLARENCE O LEVERETTE
PO Box 420
State Line, MS 39362-0420

**1. DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.

**A. Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.

**B. Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.

**C. Loan.** The Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually or together. "You" and "your" refers to the Loan's lender.

**F. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**2. SINGLE ADVANCE.** In accordance with the terms of this Agreement and other Loan Documents, you will provide me with a term note in the amount of $28,230.00 (Principal). I will receive the funds from this Loan in one advance. No additional advances are contemplated, except those made to protect and preserve your interests as provided in this Agreement or other Loan Documents.

**3. MATURITY DATE.** I agree to fully repay this Loan by June 8, 2012.

**4. WARRANTIES AND REPRESENTATIONS.** I represent and warrant that I have the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing me or to which I am a party.

**A. Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.

**B. Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.

**C. Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.

**D. Loan Purpose.** The purpose of this Loan is Farm - Agricultural Purposes.

**E. No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing.

**F. Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.

**G. Legal Disputes.** There are no pending or threatened lawsuits, arbitrations or other proceedings against me or my property that singly or together may materially and adversely affect my property, operations, financial condition, or business.

**H. Adverse Agreements.** I am not a party to, nor am I bound by, any agreement that is now or is likely to become materially adverse to my business, Property or operations.

**I. Other Claims.** There are no outstanding claims or rights that would conflict with the execution, delivery or performance by me of the terms and conditions of this Agreement or the other Loan Documents. No outstanding claims or rights exist that may result in a lien on the Property, the Property's proceeds and the proceeds of proceeds, except liens that were disclosed to and agreed to by you in writing.

**J. Solvency.** I am able to pay my debts as they mature, my assets exceed my liabilities and I have sufficient capital for my current and planned business and other activities. I will not become insolvent by the execution or performance of this Loan.

**5. FINANCIAL STATEMENTS.** I will prepare and maintain my financial records using consistently applied generally accepted accounting principles then in effect. I will provide you with financial information in a form that you accept and under the following terms.

Clarence O Leverette
Mississippi Commercial Loan Agreement
MS/4XXXJAY020044170000020902808080809Y

©1996 Bankers Systems, Inc., St. Cloud, MN ExⱣereȜ

Initials 

Page 1

**A. Certification.** I represent and warrant that any financial statements that I provide you fairly represents my financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of my direct or contingent liabilities and there has been no material adverse change in my financial condition, operations or business since the date financial information was prepared.

**B. Frequency.** In addition to the financial statements provided to you prior to closing, I will provide you with current financial statements on an annual basis, or as otherwise requested by you, until I have performed all of my obligations under the Loan and you terminate the Loan in writing.

**C. SEC Reports.** I will provide you with true and correct copies of all reports, notices or statements that I provide to the Securities and Exchange Commission, any securities exchange or my stockholders, owners, or the holders of any material indebtedness as soon as available or at least within   days after issuance.

**D. Requested Information.** I will provide you with any other information about my operations, financial affairs and condition within   days after your request.

**6. COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, I will comply with the following terms, unless you waive compliance in writing.

**A. Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

**B. Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

(1) You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

(2) You may discuss my affairs, finances and business with any one who provides you with evidence that I have a creditor of mine, the sufficiency of which will be subject to your sole discretion.

(3) You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of those records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C. Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D. Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, reputation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E. New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a dissolution, conversion or interest exchange.

**F. Dealings with Insiders.** I will not purchase, acquire or lease any property or services from, or sell, provide or lease any property or services to, or permit any outstanding loans or credit extensions to, or otherwise deal with, any insiders except as required under contracts existing at the time I applied for the Loan and approved by you or as this Agreement otherwise permits. I will not change or breach these contracts existing at Loan application so as to cause an acceleration of or an increase in any payments due.

**G. Other Debts.** I will pay when due any and all other debts owed or guaranteed by me and will faithfully perform, or comply with all the conditions and obligations imposed on me concerning the debt or guaranty.

**H. Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except:  debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**I. Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**J. Certification of No Default.** On your request, my chief financial officer or my independent accountant will provide you with a written certification that to the best of his/her knowledge no event of default exists under the terms of this Agreement or the other Loan Documents, and that there exists no other action, condition or event which with the giving of notice or lapse of time or both would constitute a default. As requested, my chief financial officer or my independent accountant will also provide you with computations demonstrating compliance with any financial covenants and ratios contained in this Agreement. If an action, condition or event of default does exist, the certificate must accurately and fully disclose the extent and nature of this action, condition or event and state what must be done to correct it.

**K. Use of Loan Proceeds.** I will not permit the loan proceeds to be used to purchase, carry, reduce, or retire any loan originally incurred to purchase or carry any margin stock or otherwise cause the Loan to violate Federal Reserve Board Regulations U or X, or Section 8 of the Securities and Exchange Act of 1934 and its regulations, as amended.

**L. Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**M. No Other Liens.** I will not create, permit or suffer any lien or encumbrance upon any of my properties for or by anyone, other than you, except for: nonconsensual liens imposed by law arising out of the ordinary course of business on obligations that are not overdue or which I am contesting in good faith after making appropriate reserves; valid purchase money security interests on personal property; or any other liens specifically agreed to by you in writing.

**N. Guaranties.** I will not guaranty or become liable in any way as surety, endorser (other than as endorser of negotiable instruments in the ordinary course of business) or accommodation endorser or otherwise for the debt or obligations of any other person or entity, except to you or as you otherwise specifically agree in writing.

**O. No Default under Other Agreements.** I will not allow to occur, or to continue unremedied, any act, event or condition which constitutes a default, or which, with the passage of time or giving of notice, or both, would constitute a default  under any agreement, document, instrument or undertaking to which I am a party or by which I may be bound.

Clarence O Leverette
Mississippi Commercial Loan Agreement
MS/4XXXJAY020044170000020902B060800Y

©1996 Bankers Systems, Inc., St. Cloud, MN

Initials _____
Page 2

**P. Legal Disputes.** I will promptly notify you in writing of any threatened or pending lawsuit, arbitration or other proceeding against me or any of my property, not identified in my financial statements, or that singly or together with other proceedings may materially and adversely affect my property, operations, financial condition or business. I will use my best efforts to bring about a favorable and speedy result of any of these lawsuits, arbitrations or other proceedings.

**Q. Other Notices.** I will immediately provide you with any information that may materially and adversely affect my ability to perform this Agreement and of its anticipated effect.

**R. Loan Obligations.** I will make full and timely payment of all principal and interest obligations, and comply with the other terms and agreements contained in this Agreement and in the other Loan Documents.

**S. Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee or lender loss payee endorsement for you when these endorsements are available. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**T. Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**U. Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**V. Reserves.** You may set aside and reserve Loan proceeds for Loan interest, fees and expenses, taxes, and insurance. I grant you a security interest in the reserves.

No interest will accrue on any reserve Loan proceeds. Disbursement of reserves is disbursement of the Loan's proceeds. At my request, you will disburse the reserves for the purpose they were set aside for, as long as I am not in default under this Agreement. You may directly pay these reserved items, reimburse me for payments I made, or reduce the reserves and increase the Loan proceeds available for disbursement.

**W. Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**7. DEFAULT.** I will be in default if any of the following occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

**D. Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E. Other Documents.** A default occurs under the terms of any other Loan Document.

**F. Other Agreements.** I am in default on any other debt or agreement I have with you.

**G. Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H. Judgment.** I fail to satisfy or appeal any judgment against me.

**I. Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J. Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K. Property Transfer.** I transfer all or a substantial part of my money or property.

**L. Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M. Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or make possible the production of an agricultural commodity, as further explained by federal law.

**N. Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**8. REMEDIES.** After I default, you may at your option do any one or more of the following.

**A. Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B. Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C. Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D. Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E. Attachment.** You may attach or garnish my wages or earnings.

**F. Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**G. Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and

legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Agreement will be reasonable notice to me under the Mississippi Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing.

If any items not otherwise subject to this Agreement are contained in the Property when you take possession, you may hold those items for me at my risk and you will not be liable for taking possession of them.

**H. Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**9. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**10. APPLICABLE LAW.** This Agreement is governed by the laws of Mississippi, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Mississippi, unless otherwise required by law.

**11. JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. You may assign all or part of your rights or duties under this Agreement or the Loan Documents without my consent. If you assign this Agreement, all of my covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit your successors and assigns. I may not assign this Agreement or any of my rights under it without your prior written consent. The duties of the Loan will bind my successors and assigns.

**12. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by you and me. This Agreement and the other Loan Documents are the complete and final expression of the understanding between you and me. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**13. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

**14. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any financial statement or information you request. All financial statements and information I give you will be correct and complete. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**15. SIGNATURES.** By signing, I agree to the terms contained in this Agreement. I also acknowledge receipt of a copy of this Agreement.

BORROWER:

Clarence O Leverette
Individually

Reprint Page 1 - 11/4/2011, 12:05pm   Archive Copy

Reprint Page 1 - 6/8/2009, 12:07pm   Archive Copy

**· : :. 182080848**

| File Number: 20080069288B |
| Date Filed: 04/08/2008 08:00 AM |
| C. Delbert Hosemann, Jr. |
| Secretary of State |

## UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

COMMUNITY BANK, ELLISVILLE, MISSISSIPPI
P. O. BOX 265
LAUREL, MS 39441

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| LEVERETTE | CLARENCE | O | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| PO BOX 420 | STATE LINE | MS | 39362-0420 | 21 |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names    ☐ NONE

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)    ☐ NONE

3a. ORGANIZATION'S NAME

COMMUNITY BANK, ELLISVILLE, MISSISSIPPI

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P. O. BOX 265 | LAUREL | MS | 39441 | 034 |

4. This FINANCING STATEMENT covers the following collateral:
1999 C80 CASE TRACTOR S#1007980
1969 JOHN DEERE TRACTOR S#TX13R115699R
1995 THOMAS BOBCAT LOADER S#LE006026
1985 CHEVROLET SPREADER TRUCK S#1GEC7D1B6FV218672
PULVERIZER S#333304

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

ACCT #

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)    Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ  6/30/2001