# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE: CLARENCE O'NEAL LEVERETTE         CASE NO. 11-51548-KMS
                                         CHAPTER 13

## ORDER GRANTING MOTION TO LIFT STAY AND FOR ABANDONMENT

This matter came on for hearing on December 1, 2011, (the "Hearing") on the Motion to Lift Stay and for Abandonment ("Motion"), (Dkt. No. 59), filed by Community Bank; and the Response to the Motion to Lift Stay and for Abandonment, (Dkt. No. 64), filed by debtor Clarence O'Neal Leverette, Sr. ("Leverette"). At the Hearing, Samuel J. Duncan represented the Trustee, Stephen E. Gardner represented Community Bank, and John Anderson ("Anderson") represented Leverette. The Court heard the arguments of counsel and testimony of witnesses, ordered Anderson to obtain and file Leverette's produce contract documents no later than December 8, 2011, and file a modified plan no later than December 15, 2011, and reset the Motion to January 19, 2012 for a final ruling. For the reasons that follow, the Court finds that Community Bank's Motion to Lift Stay and for Abandonment is GRANTED.

## I. JURISDICTION

The Court has jurisdiction over the parties and subject matter to this action pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 362 and 554. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## II. BACKGROUND

Prior to filing the instant Chapter 13 case, Clarence Leverette ("Leverette") executed three notes in favor of Community Bank to finance his poultry farm operations. The first note, executed on March 4, 2002, for the purpose of permanently financing poultry houses, secured

1

repayment with equipment, land, mobile home, poultry houses, assignment of wages, and houses and equipment used in poultry operations.[1] (Dkt. No. 59 at 5-8). The second note, executed on September 4, 2009 and fully matured on September 4, 2010, secured repayment with a Deed of Trust in 623 Woulard Bend River Road.[2] (Dkt. No. 59 at 27). The third note, executed on June 8, 2009, secured repayment with farm equipment and assignment of all moneys, wages, claims for wages and/or commissions due or to become due, and was cross collateralized with the first loan.[3] (Dkt. No. 59 at 37). Leverette defaulted on the notes and on July 8, 2011, on the eve of foreclosure, filed for relief under Chapter 13 of the Bankruptcy Code.[4] (Dkt. No. 1).

At the Hearing, Leverette testified that he lost his poultry contract and is, thus, no longer in the poultry business. He further testified that his employment with Joe Magee Construction, reflected in his bankruptcy schedules, was on hold until January, but that his unemployment benefits would cover payments in his bankruptcy case.[5] Leverette testified that he obtained

---

[1] The original principal amount of the loan is $445,000.00 at 7.5% interest. Payments on this note are required annually in the amount of $50,429.98 beginning March 4, 2002 and ending with final payment on March 4, 2017. At the Hearing, Community Bank testified that the last payment it received was made on August 30, 2010, and that the arrearage is $40,242.

[2] The original principal amount of the loan is $21,877.47 at 7% interest. The terms required payment in full by September 4, 2010. The purpose of the loan is "Farm – Agricultural Purposes." (Dkt. No. 59 at 27).

[3] The original principal amount of the loan is $28,230.00 at 7% interest. The terms require two payments of $6,486.00 beginning on June 8, 2010, with a single balloon payment of the entire unpaid balance due on June 8, 2012. The purpose of the loan is "Farm – Agricultural Purposes." (Dkt. No. 59 at 37).

[4] On December 13, 2010, prior to instant bankruptcy, Merline W. Leverette, filed a case under chapter 7 of the bankruptcy code. *In re Merline Williams Leverette*, No. 10-52955-KMS (Bankr. S.D. Miss. filed Dec. 13, 2010). The Court entered an order granting Community Bank relief from the stay and to compel abandonment as to the property in the instant case. (Dkt. No. 31). The case was closed without discharge on April 15, 2010, (Dkt. No. 38), and, on July 8, 2011, Clarence Leverette filed the instant Chapter 13 bankruptcy.

[5] Specifically, Leverette testified that the last time he worked for the Joe Magee Construction was on December 15, 2011, and that he was laid off until after the new year.

contracts with Walmart and Mississippi schools[6] to buy vegetables.[7]  However, Leverette has failed to provide any evidence of these contracts, despite a Court order requiring their production.

At the hearing, Community Bank took the position that its interests are not adequately protected because the loan agreements were made to finance poultry operations,[8] not farming of crops,[9] and speculative income is not sufficient to provide adequate protection or to propose a good faith, confirmable plan.  It further alleges that Leverette does not have adequate income to support reorganization, arguing that income from farming crops is speculative at best, without contract documents to prove otherwise, because this will be the first time Leverette has grown vegetables commercially and his testimony indicated that the crops are not insured.  Furthermore, Community Bank's representative testified that the land, poultry houses and equipment are not insured by Leverette, as required by the agreement, instead the bank has

---

[6] Leverette's testimony was inconsistent, confusing and unclear as to the entity contracting to buy vegetables.  For instance, his testimony referenced the "State of Mississippi School Board," Mississippi schools, and Mississippi school systems.  For purposes of this Opinion the alleged contracting party is identified as Mississippi schools.

[7] Leverette testified that he planted 7 acres of wheat, which will be harvested in April, to sell to "whoever wants to buy it." Collard greens will be planted in January and harvested in April for sale to Walmart and Mississippi schools.  Five acres of okra will also be planted.  Leverette provided no evidence of crop insurance and testified that this will be the first time he has grown vegetables commercially.

[8] The loan agreement for Note 1 states: "12. Property Condition, Alterations and Inspection
. . . *Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent*. . . . No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance.  Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument.  Grantor shall not partition or subdivide the Property without Lender's prior written consent." (Dkt. No. 59 at 29) (emphasis added).  Notes 2 and 3 state: "I will keep the Property in my possession and in good repair.  *I will use it for agricultural purposes*. I will not change this specified use without your prior written consent. . . ." (Dkt. No. 59 at 38) (emphasis added).

[9] Leverette testified that he intends to convert the chicken houses into a "hot house."  According to the terms of the Note, Community Bank would have to consent to this change.

3

obtained forced-placed insurance. The representative of Community Bank testified that both the poultry houses and equipment are depreciating rapidly without being used; Leverette did not dispute this fact.

All parties agreed that the proposed plan was unconfirmable. Thus, at the conclusion of the Hearing, the Court ordered Leverette to file an amended plan to address all deficiencies raised by the Trustee's Objection to Confirmation and to obtain and produce the vegetable contracts to Community Bank and this Court.[10] (Dkt. No. 67).

### III. LAW & ANALYSIS

Pursuant to 11 U.S.C. 362(d),

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;

**(2)** with respect to a stay of an act against property under subsection (a) of this section, if-

    **(A)** the debtor does not have an equity in such property; and

    **(B)** such property is not necessary to an effective reorganization;

11 U.S.C. § 362(d).

Under § 362(g), the movant has the burden of proof on the issue of equity and the party opposing the motion has the burden of proof on all other issues.

---

[10] Another issue brought up at the Hearing was the failure of Leverette to include his spouse's income on Schedule I. After the Hearing, Leverette filed amended schedules adding spousal income and income from the proposed farming operations. (Dkt. No. 72).

**A. The stay is lifted under § 362(d)(1) for "cause" including lack of adequate protection.**

To prevail on a motion for relief from the stay, the debtor has the burden to offer adequate protection and prove that the protection offered is adequate. 11 U.S.C. § 362(g). At the hearing, Community Bank's representative testified that: (1) the poultry houses and equipment are rapidly deteriorating in their unused state and are not insured by Leverette, as required by the terms of the Note, but are insured by forced-placed insurance; (3) the plan of reorganization is not feasible because the farming income is speculative; and (4) changing the nature of the collateral from poultry operations to a vegetable farm harms Community Bank because the valuation used to determine the loan amount was based on the value of the property as a fully functioning poultry operation. Leverette responded by alleging that the he obtained contracts to plant and sell vegetables to Walmart and Mississippi schools. He testified that wheat has already been planted, and another crop would be planted in January, both of which should harvest in April and yield about $25,000.00 profit. Leverette also noted that the Notes require annual, not monthly, payments and that the harvests will allow him to make the payment.

Despite Leverette's testimony and a Court order, no contract documents or evidence of any agreement between Leverette and Walmart and/or Mississippi schools have been produced. Leverette testified that the crops are not insured and that he believed they would be insured by Walmart.[11] This is the first time Leverette has grow vegetables commercially, so the Court has no basis for judging past performance. *See In re Royal d'Iberville Corp.*, 10 B.R. 37 (Bankr. S.D. Miss. 1981) (past performance is an indication as to whether effective reorganization is feasible).

---

[11] At the January 19, 2012 hearing on the Trustee's Response to Leverette's Motion to Amend Amend Plan , Leverette testified that he had obtained crop insurance through the United State Department of Agriculture. However, no insurance policies or other evidence of insurance was produced.

Community Bank further argues that its collateral is not protected because it is rapidly deteriorating without use. Leverette did not contest this allegation but further elaborated that he planned to convert the poultry houses into "hot houses" by removing the roof and replacing it with plastic. This materially alters the underlying contract, which was executed to finance poultry operations. Leverette does not provide and has not offered any payments, periodic or otherwise, to account for the depreciation.

Pursuant to the testimony, bankruptcy schedules, proposed plan, and evidence before the Court, "cause" including lack of adequate protection exists under § 362(d)(1) to lift the stay as to Community Bank.

**B. The stay is lifted under § 362(d)(2) because the property lacks equity and is not necessary to an effective reorganization.**

On an action to lift stay pursuant to § 362(d)(2), the creditor bears the burden to establish that the property lacks equity and the debtor has the burden to establish that the property is necessary to an effective reorganization. § 362(g).

"'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it." *Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327, 329 (5th Cir. 1990) (internatl citations omitted). At the Hearing, Leverette stipulated that the property has no equity.[12]

To defeat a motion for relief from stay, the debtor must prove the property is necessary for "effective reorganization." § 362(d)(2)(B), (g)(2). A majority of courts addressing this issue have held that "effective reorganization" requires a showing of a "reasonable prospect for

---

[12] At the Hearing, Community Bank provided an appraisal valuing the property at $260,000. Anderson indicated that he attempted to obtain an appraisal of the property but the appraiser would not value the property below the appraisal of Community Bank. Thus, the parties do not dispute the value in Community Bank's appraisal or that the property lacks equity. Leverette's bankruptcy schedules also provide that there is no equity in the property.

successful reorganization within reasonable time." *Matter of Canal Place Ltd. P'ship*, 921 F.2d 569, 577 (5th Cir. 1991) (*citing see Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 370 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988)). These courts usually require that a debtor must "do more than manifest unsubstantiated hopes for successful reorganization." *Id*. Fifth Circuit case law "instructs that 'necessary to an effective reorganization' means there must be a reorganization that is reasonably in prospect for the Debtor—not simply a pipe dream." *In re Three Strokes Ltd. P'ship*, 397 B.R. 804, 809 (Bankr. N.D. Tex. 2008) (*citing United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d at 370-71, *aff'd*, 484 U.S. 365 (1988) ("Courts have consistently construed [Section] 362(d)(2)(B) to require a showing by the debtor that there is a reasonable possibility of a successful reorganization within a reasonable time. The mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible.")). "The reference to 'effective' reorganization should require relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations." 2 Collier on Bankruptcy ¶ 362.07 at 362-62.

The testimony and evidence before the Court indicates that Leverett lacks a reasonable likelihood of reorganization because he lacks sufficient income to propose a feasible plan. Leverette's Amended Schedule I includes $3,336.67 gross income from Joe Magee Construction, which does not seem to indicate that the lay-off period was taken into account, $5,300.00 a month for "regular income from operation of business, profession or farm," and spousal gross income of $1,629.33. Based on the testimony at the Hearing, Leverette's failure to provide documented evidence of the farming contracts with Walmart or Mississippi schools, and the lack of detail in the Amended Schedules, the farming income is speculative at best and should not be

taken into account. *See In re Alfonio*, 221 B.R. 927, (B.A.P. 1st Cir. 1998) (proposed plan including $520,000 contribution by debtor's sister was not taken into account because payments were speculative at best; plan was not feasible). Leverette provided no detailed statement, as required by the plain language of Schedule I, as to how he arrived at the monthly income of $5,300.00 for farming. Further, Amended Schedule I does not account for the unemployment income Leverette testified to receiving at the Hearing. Amended Schedule J does not include any "regular expenses from operation of business, profession or farm" or any taxes not deducted from wages.[13] Leverette was given ample opportunity to provide documentation of his vegetable contracts and proposed farming operations; however, no details of any kind have been provided. Thus, the Court has no basis to conclude that the farming income is realistic or feasible.

Taking into account only the construction income, which Leverette testified under oath would resume in January, and his spouse's income, Leverette's monthly income is $2,455.55. However, the amended proposed plan file by Leverette ("Amended Plan") indicates that the current monthly income is $0.00. According to the Amended Plan, Leverette will pay the arrearage on Community Bank's Notes inside the plan and make direct payments pursuant to the Notes outside the plan. However, Leverette's income is insufficient to maintain a feasible plan. Pursuant to the terms of Note 1, payment of $50,429.98 is due on March 4, 2012. According to the terms of Note 3, the entire outstanding balance is due on June 8, 2012. Even if Leverette's Amended Schedule I is taken at face value to include the speculative farming income, his income is still insufficient to maintain payments on the Notes outside the plan. Furthermore, Leverette's own testimony revealed that any profit from farming would not be realized, if at all, until April,

---

[13] There is no indication that the $5,300.00 per month in farming income took into account any taxes required to be withheld.

when the first crop is harvested. Thus, even if the potential profit is realized, Leverette will already be in default, missing a second annual payment under the terms of Note 1, which is due on March 4, 2012. This does not even include the payment outside the plan on Note 3.

Leverette has not met his burden to prove feasibility of the Amended Plan. *See In re Tate*, 217 B.R. 518 (Bankr. E.D. Tex. 1997) (failure to propose a feasible plan is grounds for granting relief from the automatic stay). The Amended Plan, on its face, is unconfirmable. Thus, Community Bank will be victim to further delay in debtor's attempt to confirm a plan. Over six months have elapsed since filing, and Leverette has yet to propose a confirmable plan or provide any evidence of feasibility. For these reasons the Court finds that Community Bank's Motion should be and is hereby **GRANTED**.

**IT IS THEREFORE ORDERED** that Community Bank's Motion for Relief from the Automatic Stay and Abandonment is **GRANTED** with respect to the collateral.

**SO ORDERED.**

_____
Katharine M. Samson
United States Bankruptcy Judge
Dated: January 24, 2012

9